Jeremy T. Bergstrom, Esq.
Arizona Bar No. 19399
MILES, BAUER, BERGSTROM & WINTERS, LLP
2200 Paseo Verde Pkwy., Suite 250
Henderson, NV 89052
(702) 369-5960 / FAX (702) 369-4955
File No. 09-94121

Attorneys for Secured Creditor,
BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING,
LP fka COUNTRYWIDE HOME LOANS, INC.

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MARVIN L. ROSE AND LORETTA M. ROSE,<br><br>        Debtors. | Chapter 13<br><br>Case No.: 2:09-BK-16494-SSC |
| BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, fka COUNTRYWIDE HOME LOANS, INC.<br><br>        Movant,<br><br>        vs.<br><br>MARVIN L. ROSE AND LORETTA M. ROSE, Debtors; EDWARD J. MANEY, Trustee,<br><br>        Respondents. | |

## AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

    BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS

SERVICING, LP fka COUNTRYWIDE HOME LOANS, INC., its assignees and/or successor in

interest ("Secured Creditor" herein), moves this Court for an Order terminating the Automatic

1

1

2   Stay so that Secured Creditor (and its Trustee) may commence and continue all acts necessary to

3   foreclose under the Deed of Trust secured by Debtors' property, generally described as 16193

4   West Davis Road, Surprise, AZ 85374 ("Property" herein).

5        There is currently a second Trust Deed upon the Property in favor of and/or serviced by

6   BAC HOME LOANS SERVICING, LP, securing a Promissory Note in an unknown original

7   amount. The present unpaid principal balance of said Note is $67,374.00 as listed on Schedule

8   D-Creditors Holding Secured Claims of the Debtors' Schedules. Attached hereto as Exhibit "A"

9   is a copy of Schedule D-Creditors Holding Secured Claims of the Debtors' Schedules. Secured

10   Creditor will seek leave of Court to specify the amount of delinquency thereon at the time of

11   Hearing.

12        Secured Creditor alleges the value of the Property to be approximately $133,000.00 based

13   upon Zillow.com estimation report executed on November 10, 2009. Attached hereto as Exhibit

14   "B", is a copy of the Zillow.com estimation report. Secured Creditor requests that the Court take

15   Judicial Notice, pursuant to Federal Rules of Evidence Rule 201, of the attached Exhibit as to the

16   issue of value of the subject Property.

17        Secured Creditor will seek leave of Court to specify any further encumbrances against the

18   subject Property at the time of trial/preliminary hearing.

19        Secured Creditor is also entitled to attorney's fees and costs under the Note and Deed of

20   Trust securing Secured Creditor's claim, or alternatively under 11 U.S.C. 506(b) and such other

21   relief as the Court deems just and proper.

22   ///

23   ///

24   ///

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

### I

This Secured Creditor is the servicer and/or beneficiary of a Promissory Note dated May 10, 2006, in the principal amount of $182,500.00, which is secured by the above-referenced Deed of Trust. Copies of said Note and Deed of Trust are attached hereto as Exhibits "C" and "D" and by this reference incorporated herein.

On or about July 16, 2009, Debtors commenced the current Chapter 13 Bankruptcy proceeding in this Court.

The Debtors' total arrearages are broken down on the Supplemental Declaration by the Secured Creditor on file herein.

Secured Creditor has elected to initiate foreclosure proceedings on the subject property with respect to the subject Trust Deed. However, Secured Creditor is precluded from proceeding to publish the necessary notices and commencing said foreclosure action during the pendency of this Bankruptcy.

## SECURED CREDITOR IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY FOR "CAUSE" UNDER 11 U.S.C. SECTION 362(d)(1)

### II

11 U.S.C. Section 362(d) provides:

" (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

   (1) for cause, including lack of adequate protection of an interest in property of such party in interest; or ..."

3

1       Subsection (1) of 11 U.S.C. Section 362(d) allows the court to grant relief from the

2  automatic stay for "cause." A debtor's failure to make post-petition mortgage payments as they

3  become due in a Chapter 13 case constitutes "cause" for relief from the automatic stay pursuant

4  to Section 362(d)(1). In re Ellis, 60 B.R. 432 (9th Cir. 1985).

5       In the instant case, the Debtors' Chapter 13 Plan provides for payment of post-petition

6  regular monthly payments directly to Secured Creditor. Debtors are in default to Secured

7  Creditor for post-petition payments, and "cause" is therefore present justifying relief from stay.

8       WHEREFORE, Secured Creditor prays judgment as follows:

9     (1)   For an Order granting relief from Automatic Stay, permitting Secured Creditor to

10  move ahead with Foreclosure proceedings under Secured Creditor's Trust Deed, and to sell the

11  subject Property at a Trustee's Sale under the items of said Trust Deed including necessary

12  action to obtain possession of the Property.

13     (2)   For an Order waiving the 14-day stay provided by Bankruptcy Rule 4001(a)(3).

14     (3)   For an Order binding and effective despite any conversion of this bankruptcy case.

15     (4)   For such other relief as this Court deems appropriate.

16                MILES, BAUER, BERGSTROM & WINTERS, LLP

17  Dated:   December 8, 2009    By:   /s/ Jeremy T. Bergstrom, Esq.
                                    Jeremy T. Bergstrom, Esq.

18                                  Attorney for Secured Creditor

19  09-94121/azmrs.dot/fam

20

21

22

23

24

# Exhibit A

In re     **MARVIN L ROSE,**
         **LORETTA M ROSE**                                Case No. _____

                                      Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | | |
| Account No. 136354146 **BAC Home Loans Servicing LP PO BOX 10219 Van Nuys, CA 91410-0219** | C | | | | First Mortgage **Single family residence/investment property located at 16193 W. Davis Road, Surprise, AZ** | | | | | |
| | | | | | Value $       **Unknown** | | | | 182,278.00 | Unknown |
| Account No. 150461732 **BAC Home Loans Servicing, LP PO BOX 10219 Van Nuys, CA 91410-0219** | C | | | | First Mortgage **Single family residence/investment property located at 17851 West Calavar Road, Surprise AZ** | | | | | |
| | | | | | Value $       **Unknown** | | | | 207,835.00 | Unknown |
| Account No. 150461700 **BAC Home Loans Servicing, LP PO BOX 10219 Van Nuys, CA 91410-0219** | C | | | | Second Mortgage **Single family residence/investment property located at 16193 W. Davis Road, Surprise, AZ** | | | | | |
| | | | | | Value $       **Unknown** | | | | 67,374.00 | Unknown |
| Account No. 2056777 **CITI MORTGAGE CO. INC. P.O. BOX 9438 - Dept O Gaithersburg, MD 20898** | C | | | | First Mortgage **Single family primary residence property located at 16047 W. Tara Lane, Surprise, AZ 85374** | | | | | |
| | | | | | Value $       **Unknown** | | | | 137,725.00 | Unknown |

  **0**    continuation sheets attached

| | | |
|---|---|---|
| Subtotal (Total of this page) | 595,212.00 | 0.00 |
| Total (Report on Summary of Schedules) | 595,212.00 | 0.00 |

Case 2:09-bk-16494-SSC    Doc 1    Filed 07/16/09    Entered 07/16/09 10:59:56    Desc
Case 2:09-bk-16494-SSC    Doc 33    Filed 12/08/09    Entered 12/08/09 13:57:02    Desc
Main Document      Page 6 of 21

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                  Best Case Bankruptcy

# Exhibit B

### 16193 W Davis Rd
Surprise AZ 85374

-- beds, 3.5 baths, 2,030 sq ft
**Zestimate®: $133,500**

Get a free professional estimate
**My Estimate:**

**Monthly Payment: $ 561 edit**
Refinance Rate Sale at Ditech

### Bird's Eye View



See a

### Home Info

**Public Facts:**
- Single family
- 3.5 bath
- 2,030 sqft
- Lot 5,430 sqft
- Built in 1999

### Neighborhood

**Nearby Schools:**

**District:**
--
**Primary:**
Paradise Education ...
**Middle:**
--
**High:**
Willow Canyon High ...

See more Surprise schools

### Charts & Data



See all charts & data

**ZESTIMATE®: $133,500**
Value Range: $106,800 -
$148,185

**Work with an agent from West USA Realty to get a professional estimate.**

First Name*

Last Name*

Email Address*

Phone Number*
(   )   -   ext.

I am*

30-day change: $500
*Zestimate updated: 11/09/2009*

**Last sale and tax info**

**Sold 09/30/1999:**
$127,370
**2010 Property Tax:**
$1,308

: 35 ~ Car-Dependent

Please Choose One

Message (optional)

Or call (888) 346-3155

---

**Street Map**

**16193 West Davis Road, Surprise, AZ**
Bird's eye view and larger map for 16193 W Davis Rd
Edit map location for 16193 W Davis Rd

**Alternate Addresses**
16193, w, west, davis, davi s, davi so, davi south, davis, daviso,
davisouth, rd, road, surprise, sun city, suncity, az, ariz, arizona, 85374

# Exhibit C

ORIGINAL



repared by: ANDY SKITKA

LOAN #: ▮▮▮▮▮▮

# InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE
### (One-Year **LIBOR** Index (As Published in *The Wall Street Journal*) – Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MAY 10, 2006                    SURPRISE                    COLORADO
[Date]                          [City]                      [State]

16193 W DAVIS RD, SURPRISE, AZ 85374-5749
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 182,500.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.375  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will make a payment on the  first        day of every month, beginning on   JULY 01, 2006 .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
JUNE 01, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
My monthly payment will be in the amount of U.S. $ 969.53         before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE – ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)                    Page 1 of 4                          Initials: ▬▬







**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of JUNE, 2016 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.375 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.



**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a rtain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the terest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or livered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, e Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be id back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those :penses include, for example, reasonable attorneys' fees.

## GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by :livering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note older a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will : given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address `I am given a notice of that different address.

## . OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in iis Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is lso obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety r endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights nder this Note against each person individually or against all of us together. This means that any one of us may be required to ay all of the amounts owed under this Note.

## 0. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the ight to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 1. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as his Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. :hat Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all mounts I owe under this Note. Some of those conditions read as follows:

**(A)** Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Jniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)** When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Jniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.



If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
MARVIN L. ROSE                                    -Borrower

_____(Seal)
                                                  -Borrower

_____(Seal)
                                                  -Borrower

_____(Seal)
                                                  -Borrower

*[Sign Original Only]*

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                    Page 4 of 4

# Exhibit D

**Official Records of Maricopa County Recorder Helen Purcell**

**Electronic Recording**
**20060670509,05/17/2006**
**03:32,40022661-22-1-1--,N**

After Recording Return To:
COUNTRYWIDE HOME LOANS,
INC.
MS SV-79 DOCUMENT
PROCESSING
P.O.Box 10423
Van Nuys
CA 91410-0423

Prepared By:
ANDY SKITKA

009015647   ROSE   ML
610.                     D2  001  001

————————————— [Space Above This Line For Recording Data] —————————————

[Escrow/Closing #]                    [Doc ID #]

## DEED OF TRUST
MIN

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated   MAY 10, 2006
together with all Riders to this document.
(B) "Borrower" is
MARVIN L ROSE, AND LORETTA M ROSE, HUSBAND AND WIFE, AS
COMMUNITY PROPERTY WITH RIGHT OF          SURVIVORSHIP

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
17851 W CALAVAR RD
SURPRISE, AZ 85379-7503
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of NEW YORK

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 11
VMP®-6A(AZ) (0205)    CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291          Form 3003 1/01 (rev. 6/02)
CONV/VA

*23991*





Lender's mailing address is
4500 Park Granada MSN# SVB-314
Calabasas, CA 91302-1613
(D) "Trustee" is
CASTLE, BARRETT, DAFFIN & FRAPPIER

Trustee's mailing address is
1099 18TH STREET
DENVER, CO 80202
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated    MAY 10, 2006
The Note states that Borrower owes Lender
ONE HUNDRED EIGHTY TWO THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 182,500.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JUNE 01, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the

repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the            COUNTY       of
[Type of Recording Jurisdiction]
      MARICOPA                   :
[Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 501934262                    which currently has the
address of
            16193 W DAVIS RD, SURPRISE
[Street/City]
Arizona 85374-5749 ("Property Address"):
[Zip Code]
     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
     Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return

"Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence. Time is of the essence in each covenant of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MARVIN L. ROSE                                              -Borrower

_____ (Seal)
LORETTA M. ROSE                                            -Borrower

_____ (Seal)
                                                                      -Borrower

_____ (Seal)
                                                                      -Borrower

STATE OF ARIZONA,                    *Maricopa*                County ss:

The foregoing instrument was acknowledged before me this   MAY 10, 2006
by   MARVIN L. ROSE   +   LORETTA M. ROSE
_____
_____
_____
_____

My Commission Expires: AUG 17 2009

OFFICIAL SEAL
FRANK J. FRASSETTO, JR.
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Aug. 17, 2009

Notary Public                                              Frank J. Frassetto Jr.

EXHIBIT "A"

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATED IN MARICOPA COUNTY, ARIZONA:

LOT 67, MOUNTAIN VISTA RANCH PARCEL 15, ACCORDING TO BOOK 475 OF MAPS, PAGE 23, RECORDS OF MARICOPA COUNTY, ARIZONA.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY ASSESSOR AS 501-93-426 2; SOURCE OF TITLE IS DOCUMENT NO. 99-0912706 (RECORDED 09/30/99)